**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000434
11-DEC-2015
08:41 AM**

NO. CAAP-12-0000434

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
KUI PALAMA, Defendant-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 11-1-0116)

MEMORANDUM OPINION
(By:  Foley, Presiding Judge, Fujise and Ginoza, JJ.)

Plaintiff-Appellant State of Hawai'i (State) appeals from the "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Dismiss" entered on April 26, 2012 by the Circuit Court of the Fifth Circuit (circuit court),[1] which dismissed this case against Defendant-Appellee Kui Palama (Palama) for (1) simple trespass in violation of Hawaii Revised Statutes (HRS) § 708-815 (2014)[2] and (2) prohibited hunting on

---

[1]  The Honorable Kathleen N.A. Watanabe presided.

[2]  HRS § 708-815 provides:

   **§708-815 Simple trespass.** (1) A person commits the offense of simple trespass if the person knowingly enters or remains unlawfully in or upon premises.

   (2) Simple trespass is a violation.

private lands in violation of HRS § 183D-26 (2011).[3]  The circuit court granted Palama's Motion to Dismiss on the grounds that his pig hunting in this case was an exercise of native Hawaiian rights that deserved protection under the Hawai'i Constitution.

For the reasons discussed below, and due to the particular circumstances and the record in this case, we affirm the circuit court's dismissal of the charges against Palama.

I.    Background

On January 17, 2011, Palama entered Kupo Ridge, situated at the upland, or mauka, portion of Hanapēpē Valley on the Island of Kaua'i to hunt for pig.  The record reflects that the area in which Palama hunted is privately owned and is referred to generally by the parties as Robinson Family property or Gay & Robinson property (the subject property).  Palama contends that he maintains taro patches on his kuleana land[4] located at the lower end of the Hanapēpē ahupua'a[5] and that he

---

[3]  HRS § 183D-26 provides:

> **§183D-26 Hunting on private lands prohibited.** (a) No person shall enter upon any land or premises belonging to, held, or occupied by another, for the purpose of hunting or to take any kind of wildlife including game without first having obtained permission from the owner or a duly appointed agent, if the owner is the occupier or holder, or if the owner has let another occupy or hold the same, without having first obtained the permission of the occupier or holder thereof, or the duly appointed agent of the occupier or holder.
>
> (b) No prosecution shall be brought under this section, except upon the sworn complaint of the owner, occupier, or holder of the land or premises, or a duly appointed agent, or if the owner, occupier, or holder is either a corporation or a partnership, then the complaint shall be sworn to by an officer of the corporation or by one of the members of the partnership.

[4]  The word "kuleana" is defined as, *inter alia*, "[r]ight, privilege, concern, responsibility, ... [or] small piece of property, as within an *ahupua'a*[.]"  M.K. Pukui & S.H. Elbert, Hawaiian Dictionary 179 (1986).

[5]  An "ahupua'a" is a land division usually extending from the mountains to the sea along rational lines, such as ridges or other natural characteristics.  In re Boundaries of Pulehunui, 4 Haw. 239, 241 (Haw. Kingdom 1879) (acknowledging that these "rational" lines may also be based on tradition, culture, or other factors); Pukui & Elbert, supra, 9 (defining "ahupua'a" as a "[l]and division usually extending from the uplands to the sea, so called because the boundary was marked by a heap (*ahu*) of stones surmounted by an image of a pig (*pua'a*), or because a pig or other tribute was

enters the subject property for a variety of activities, including to hunt pig and to inspect the river's water flow and quality for his taro patches.

According to Palama, on the day in question, he drove to his kuleana land, parked, and then entered the subject property by foot at 7:00 a.m. accompanied by a mule and hunting dogs to hunt pig. Palama asserts the subject property did not have any fences or signs indicating that it was private property. Palama had a hunting license at the time but did not ask for permission from anyone before entering the subject property. He used a knife to kill two wild pigs while on the subject property. On his way out of the subject property, but before reaching his truck, Palama was confronted by two Robinson employees.

On March 2, 2011, the State filed a complaint against Palama for (1) simple trespass; and (2) prohibited hunting on private lands. On February 9, 2012, Palama filed the Motion to Dismiss, asserting the constitutional defense of privilege under State v. Hanapi, 89 Hawai'i 177, 185-87, 970 P.2d 485, 493-95 (1998). Palama brought his Motion to Dismiss based on article XII, section 7 of the Hawai'i Constitution, HRS § 7-1 (2009) and HRS § 1-1 (2009), claiming that his conduct was a traditional and customary native Hawaiian practice and therefore protected.[6] The

---

laid on the altar as tax to the chief.").

[6] Article XII, section 7 of the Hawai'i Constitution provides:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

HRS § 1-1 provides:

> The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage; provided that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State.

HRS § 7-1 provides:

State filed its Memorandum in Opposition on March 12, 2012, arguing, *inter alia*, that killing game mammals is not an enumerated right and that hunting is subject to State regulation.

The circuit court held evidentiary hearings on Palama's Motion to Dismiss. The circuit court heard testimony from: expert witness Jonathan Kamakawiwoʻole Osorio, Ph.D. (Dr. Osorio),[7] a professor at the University of Hawaiʻi Center for Hawaiian Studies; kamaʻāina witnesses[8] Lavern Silva (Silva), Elvin Kaiakapu (Kaiakapu) and Herbert Kauahi (Kauahi); and Palama.

The State did not put on any evidence.

On April 26, 2012, the circuit court dismissed the charges with prejudice, ruling that Palama's conduct was constitutionally protected. As discussed more fully below, the circuit court concluded that Palama brought forward sufficient evidence to demonstrate that: (1) he is a native Hawaiian; (2) his claimed right was an established native Hawaiian custom or tradition practiced prior to 1892 and his family's pig hunting has been customarily and traditionally exercised on the subject property; (3) the subject property is not developed; and (4) his pig hunting on the subject property merited constitutional

---

Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the right of way. The springs of water, running water, and roads shall be free to all, on all lands granted in fee simple; provided that this shall not be applicable to wells and watercourses, which individuals have made for their own use.

[7] Over the State's objection, the circuit court recognized Dr. Osorio as an expert in Hawaiian studies, particularly in native Hawaiian practices. On appeal, the State does not challenge the circuit court's designation of Dr. Osorio as an expert.

[8] The circuit court uses the term kamaʻāina witness in its Findings of Fact, Conclusions of Law, and Order. A kamaʻāina witness is a person "familiar from childhood with any locality." In Re Boundaries of Pulehunui, 4 at 245. This would also include "persons [who] were specially taught and made repositories of this knowledge[.]" Id. at 241. "In this jurisdiction, we have accepted kamaʻāina testimony as proof of ancient Hawaiian tradition, custom, and usage." Hanapi, 89 Hawaiʻi at 187 n.12, 970 P.2d at 495 n.12.

protection.

The State timely filed this appeal.

## II.  Standards of Review

Palama asserts a defense based on a constitutional right.  "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  Hanapi, 89 Hawai'i at 182, 970 P.2d and 490 (quoting State v. Mallan, 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998) (internal quotation marks omitted)).

We review a circuit court's findings of fact (FOF) and conclusions of law (COL) in a pretrial ruling according to the following standard:

> Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  The circuit court's conclusions of law are reviewed under the right/wrong standard.

State v. Locquiao, 100 Hawai'i 195, 203, 58 P.3d 1242, 1250 (2002) (citations and quotation marks omitted).

## III.  Points of Error

The points of error asserted in the State's opening brief are summarized as follows:[9]

(1) the circuit court erred when it concluded that Palama met his burden under Hanapi to prove that he is a native Hawaiian and that his pig hunting is a constitutionally protected traditional and customary practice;

---

[9] We disregard some of the State's points of error.  First, the State provides no argument about its assertion that the "circuit court erred in concluding the property where Palama was hunting is an actual *ahupuaa*." Second, we decline to address the following point of error because the State appears to be challenging semantics, not substance:

> D. The circuit court erred in finding that the State has "attempt[ed] to regulate Defendant's conduct"; an accurate finding and conclusion is that the State has successfully and completely regulated Palama's pig hunting on private and/or public property. All FOF and COL.

(2) the circuit court erred when it found that Palama was a lawful occupant of an ahupua'a;

(3) the circuit court erred in concluding that the State's regulation of Palama's pig hunting on private property is a "blanket prohibition or extinguishment" of Palama's pig hunting; and

(4) the circuit court erred in concluding that Palama's pig hunting requires constitutional protection and may be upheld as long as no actual harm is done.

The State contends that it challenges all FOF and COL issued by the circuit court.

## IV. Discussion

### A. Judicial Notice and Amicus Curiae

As an initial matter, we address issues that have arisen in this appeal regarding the court's discretion to consider evidence not presented below and the proper role of amicus curiae. We emphasize that our primary task is to decide this case based on the record.

On April 1, 2015, the State filed a Motion for Judicial Notice, requesting that we take judicial notice of the following: (1) the records and files in an unrelated case pending before this court, Pele Defense Fund, et al. v. Department of Land and Natural Resources, et al., No. CAAP-14-0001033; (2) three sources referenced and relied upon by the Department of Land & Natural Resources (DLNR) in the above case; and (3) the State of Hawai'i DLNR Game Mammal Hunting Regulations, Hawaii Administrative Rules (HAR) Title 13, Chapter 123, specifically, for the Island of Kaua'i. We denied the motion "except that this court may take judicial notice of [HAR] Title 13, Chapter 123 and a chart and maps describing the regulations specific to Kaua'i." The State requested judicial notice of HAR Title 13, Chapter 123, because "[t]hese hunting regulations help this court to understand . . . that there are public hunting grounds throughout the island where pig hunting is permitted." We note, however, that the State did not argue below that Palama's defense was somehow affected by the availability of public hunting grounds on Kaua'i, and thus any such contention is waived. See State v.

Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal.").

We were also asked to consider evidence or facts not presented to the circuit court by way of amicus curiae briefs that were filed in this appeal by the Attorney General of the State of Hawai'i (Attorney General) and the Robinson Family Partners and Gay & Robinson, Inc. (Robinson Family).[10] In its amicus brief, the Attorney General asserts that in balancing the competing interests of Palama and the State, the circuit court failed to adequately consider the State's interest in public safety, in particular that hunting is a dangerous activity that the State regulates. The Attorney General notes that this court could take judicial notice of the fact that hunting is a potentially dangerous activity. In turn, the Robinson Family asserts in its amicus brief that Palama's hunting on private land without landowner permission was not a customary or traditional native Hawaiian practice, and that permitting Palama to assert such a defense promotes lawlessness. The Robinson Family requested that this court consider an article entitled, "Pua'a (pigs) In Hawai'i, from Traditional to Modern," two declarations by members of the Robinson Family, and two Kingdom of Hawai'i statutes.

It is well-recognized that "[i]n general, an amicus curiae must accept the case before the reviewing court as it stands on appeal, with the issues as framed by the parties. Accordingly, an amicus curiae generally cannot raise issues that have not been preserved by the parties." 4 Am. Jur. 2d Amicus Curiae § 7 (2007). Moreover, "an amicus curiae will not be permitted to present additional evidence on appeal which was not before the trial court[.]" 4 Am. Jur. 2d Amicus Curiae § 8.

With this in mind, we consider the evidentiary issues raised by amicus curiae in this case. In regard to the Attorney General's request that we take judicial notice of the dangers

---

[10] The Attorney General was granted leave to participate in the oral argument in this case, over Palama's objection. The Robinson Family did not participate in oral argument.

posed by hunting, the State did not argue in the circuit court that its interest in public safety should trump Palama's rights. The State also failed to present any evidence to the circuit court regarding the dangers posed by pig hunting generally, let alone the manner in which Palama hunted. We recognize the significance of the public safety issue, but we must also be mindful that this is a criminal case against Palama. The State cannot raise arguments on appeal that simply were not preserved below or assert generalized facts where no evidence was presented to the trial court to counter Palama's evidence.

In regard to the Robinson Family's amicus curiae brief and submissions, we entered an order granting Palama's motion to strike the declarations and exhibits submitted by the Robinson Family, "except to the extent that this court may take judicial notice of relevant Kingdom of Hawai'i laws." We conclude that, although we may take judicial notice of the existence of the two Kingdom laws identified by the Robinson Family in its amicus curiae brief, the significance of these laws related to the issues in this case is unclear because further factual development is needed to shed light on whether and how these laws may show, or not show, that pig hunting on private land was, or was not, a customary or traditional native Hawaiian practice. First, the Robinson Family requests judicial notice be taken of the 1892 Laws of Her Majesty Lili'uokalani, Chapter LXXVII, Section 1 (1892), entitled "To Prevent Hunting and Shooting on Private Grounds."[11] Not only does this particular statute potentially fall outside the applicable time frame,[12] we also believe further factual development is necessary to determine the

---

[11] The 1892 Laws of Her Majesty Lili'uokalani, Chapter LXXVII, Section 1 provided:

> It shall not be lawful for any person or persons to enter upon any land belonging to or occupied by another, for the purpose of hunting with dogs, or to shoot, kill, take or destroy any kind of game without first having obtained permission from the owner or occupier of such land.

[12] Queen Lili'uokalani approved Chapter LXXVII, Section 1 on December 28, 1892, approximately one month after November 25, 1892, "the date by which ancient Hawaiian usage must have been established in practice." State by Kobayashi v. Zimring, 58 Haw. 106, 115 n.11, 566 P.2d 725, 732 n.11 (1977).

true impact of this law in demonstrating what was, or was not, the customary and traditional native Hawaiian practice prior to the adoption of this law.

Second, the Robinson Family requests judicial notice of the 1874 Laws of His Majesty Kalākaua, Chapter XXVII, Section 1 (1874).[13] Interpretation of this law, as applicable to the issues in this case, also involves factual issues that simply have not been developed in this case.

**B.    The Circuit Court Did Not Err in Concluding that Palama Satisfied the Hanapi Test**

The State contends that the circuit court erred in concluding that Palama met his burden under Hanapi to prove that he is a native Hawaiian and that his pig hunting on the subject property is a constitutionally protected traditional and customary practice.

In Hanapi, the Hawaiʻi Supreme Court identified a three-part test that a criminal defendant must meet, at minimum, to establish that his or her conduct is constitutionally protected as a native Hawaiian right. 89 Hawaiʻi at 185-86, 970 P.2d at 493-94. First, the defendant "must qualify as a 'native Hawaiian' within the guidelines set out in [Public Access Shoreline Hawaii v. Hawaiʻi County Planning Commission (PASH), 79 Hawaiʻi 425, 903 P.2d 1246 (1995)]." 89 Hawaiʻi at 186, 970 P.2d at 494. Second, the native Hawaiian defendant "must then establish that his or her claimed right is constitutionally protected as a customary or traditional native Hawaiian practice." Id. Third, the defendant "must also prove that the

---

[13] The 1874 Laws of His Majesty Kalākaua, Chapter XXVII, Section 1 provided:

> All cattle, horses, mules, donkeys, sheep, goats and swine, over twelve months of age, not marked or branded according to law, and which may have been running wild and at large for six months or over, upon any of the lands of this Kingdom shall belong to, and be the property of the owners or lessees of the lands on which the said animals may be found running.

exercise of the right occurred on undeveloped or 'less than fully developed property.'" Id.

The circuit court determined that Palama "satisfied his burden through evidence and testimony" and established his constitutional defense. The State does not contest that Palama satisfied the third part of the Hanapi test. On appeal, the State argues that Palama failed to provide evidence establishing his status as a native Hawaiian or that pig hunting anywhere, let alone on Kaua'i, was a customary or traditional native Hawaiian practice.

### 1. Substantial evidence Palama is native Hawaiian

The first prong of Hanapi requires a defendant to prove that he is a descendant of "native Hawaiians who inhabited the islands prior to 1778" regardless of blood quantum. Hanapi, 89 Hawai'i at 186, 970 P.2d at 494 (quoting PASH, 79 Hawai'i at 449, 903 P.2d at 1270) (quotation marks omitted). The circuit court determined that Palama met this definition and made the following FOFs on the matter:

> 4.    The State offered no evidence to controvert that Defendant is native Hawaiian.
>
> . . . .
>
> 7.    Defendant is native Hawaiian, as testimony and exhibits collectively demonstrated that Defendant is a descendant of native Hawaiians who inhabited Kauai prior to 1778, regardless of Defendant's specific blood quantum. See Article XII, section 7 of the Hawaii Constitution; see also [PASH].

There is substantial evidence in the record supporting the circuit court's findings. The circuit court heard testimony from witnesses Silva,[14] Kaiakapu, and Kauahi regarding Palama's genealogy and received two exhibits into evidence, exhibits D-1

---

[14]    Silva testified that she is considered a family history consultant for the island and for her church, the Latter-Day Saints church; that she has volunteered for over twenty years at the family history center at her church; and that she teaches genealogy and has taken classes in genealogy at her church. Silva also testified that it is her regular practice to update the genealogy records for the Palama family and that she gathers information from various sources including family members, public records, church records and government records.

and D-2.[15]  Based on her personal knowledge of her own genealogy, and being of blood relation to Palama, Silva testified that Palama is native Hawaiian, with his great-grandfather and previous ancestors being pure Hawaiian.  The State did not object to Kaiakapu's testimony that Palama is native Hawaiian and that they belong to the same family.  The State also did not object to Kauahi's testimony that Palama is native Hawaiian.

Based on the evidence in the record, we conclude that the circuit court's FOFs 4 and 7 are not clearly erroneous.

### 2.    Customary or traditional native Hawaiian practice

The Hawai'i Supreme Court articulated the second Hanapi factor as follows:

> [O]nce a defendant qualifies as a native Hawaiian, he or she must then establish that his or her claimed right is constitutionally protected as a customary or traditional native Hawaiian practice. Some customary and traditional native Hawaiian rights are codified either in art. XII, section 7 of the Hawai'i Constitution or in HRS §§ 1-1 and 7-1 (1993). The fact that the claimed right is *not* specifically enumerated in the Constitution or statutes, does not preclude further inquiry concerning other traditional and customary practices that have existed.

Hanapi, 89 Hawai'i at 186, 970 P.2d at 494 (footnote omitted).

In this case, the circuit court concluded that Palama's pig hunting deserved constitutional protection and made several FOFs and COLs on the issue, including:

> 5.    The State offered no evidence to controvert that Defendant's pig hunting is constitutionally protected as a customary or traditional native Hawaiian practice.

> . . . .

> 8.    Defendant established, through kama'aina and expert testimony, that his hunting pig on the subject property is constitutionally protected as a customary or traditional native Hawaiian practice.

---

[15]  In its opening brief, the State notes that it objected to exhibits D-1 and D-2 and the testimony of Silva, which the circuit court overruled. Exhibit D-1 is described as a pedigree chart personally prepared by Silva that illustrates Palama's bloodline. Exhibit D-2 is described in the record as four-generation genealogical charts stored by the church.  In a footnote, the State asserts that "[n]either Ex.s [sic] D1 & D2 . . . are [Hawai'i Rules of Evidence (HRE)] 803 or HRE 804 exceptions to the hearsay rule."  However, the State does not assert as a point of error that the circuit court erred in overruling its objections, nor does the State present any substantive argument on the issue, and thus the State has waived any challenge to the admissibility of the exhibits or Silva's testimony.  Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) & (7).

. . . .

10.    Based on Dr. Jonathan Osorio's expert testimony, as
       well as the testimony of kama'aina witnesses, the Court
       finds that Defendant's pig hunting on the subject property
       constitutes an established native Hawaiian custom or
       tradition practiced prior to 1892.  See generally State v.
       Pratt (Pratt I), 243 P.3d 289, 311 (Haw.Ct.App 2010) . . .
       cert. granted, SCWC-27897, 2011 WL 1523485 (Haw. Apr. 21,
       2011).

. . . .

13.    Defendant and his ohana hunt pig for food and
       [subsistence]; the pig meat is shared with members of
       the ohana.

14.    Defendant and his ohana hunt pig for cultural reasons.

15.    Defendant and his ohana hunt pig to preserve ohana
       tradition.

16.    Defendant and his ohana hunt pig to keep the wild pig
       population down.

. . . .

CONCLUSIONS OF LAW

. . . .

3.     The "Hawaiian usage" clause may establish certain
       customary Hawaiian rights beyond those found in HRS
       § 7-1[.]

4.     In the case at bar, pig hunting, while not
       specifically enumerated in HRS § 7-1, qualifies as a
       traditional and customary native Hawaiian practice
       deserving Constitutional protection, as Defendant
       brought forward evidence that hunting pig was an
       established native Hawaiian custom or tradition
       practiced prior to 1892.  See generally Pratt I.

5.     Native Hawaiian rights protected by article XII, § 7
       may extend beyond the ahupua'a in which a native
       Hawaiian resides where such rights have been
       customarily and traditionally exercised in this
       manner. Pele Defense Fund v. Paty, 73 Haw. 578, 619,
       837 P.2d 1247 (1992). In the instant matter,
       Defendant's Ohana's pig hunting has been customarily
       and traditionally exercised on the subject property.

The State contends the circuit court erred because pig
hunting is not enumerated in HRS § 7-1, and it cannot be a
traditional or customary practice.  However, Hanapi clearly
states that "[t]he fact that the claimed right is not
specifically enumerated in the Constitution or statutes, does not
preclude further inquiry concerning other traditional and
customary practices that have existed."  Hanapi, 89 Hawai'i at
186, 970 P.2d at 494; see also Pele Defense Fund v. Paty, 73 Haw.

12

578, 619, 837 P.2d 1247, 1271 (1992) ("In [Kalipi v. Hawaiian Trust Co., 66 Haw. 1, 656 P.2d 745 (1982)] we foresaw that the precise nature and scope of the rights retained by § 1-1 would, of course, depend upon the particular circumstances of each case." (citation, internal quotation marks and brackets omitted)). Thus, COL 3 is right.

Pig hunting may qualify as a traditional and customary practice if there is "an adequate foundation in the record connecting the claimed right to a firmly rooted traditional or customary native Hawaiian practice." Hanapi, 89 Hawai'i at 187, 970 P.2d at 495 (footnote omitted).

> A defendant may lay an adequate foundation by putting forth specialized knowledge that the claimed right is a traditional or customary native Hawaiian practice. This specialized knowledge may come from expert testimony, pursuant to [Rule 702 of the Hawai'i Rules of Evidence]. . . .
>
> . . . .
> In this jurisdiction, we have also accepted kama'aina witness testimony as proof of ancient Hawaiian tradition, custom, and usage.

Id. at 187 n.12, 970 P.2d at 495 n.12.

At the hearing on Palama's motion to dismiss, several witnesses testified that pig hunting has been traditionally practiced in the area. Dr. Osorio testified that based on his training, experience, and understanding of the facts, Palama's pig hunting is an established native Hawaiian custom or tradition. Dr. Osorio testified that, including the period prior to 1892, pigs played an important role in subsistence living in ancient Hawaiian society, and Hawaiians also hunted pigs to control wild pig populations. Given this historical background, Dr. Osorio said he believed Palama was hunting "in order to supplement the diet of his family, and that he was doing this in the same way that his father before him and ancestors before him had done." Kauahi testified that "[e]ven supposedly the Robinsons owned [the subject property], people were still hunting and gathering up there." Kauahi also testified that the practice of hunting pig has been passed down from generation to generation and has always been an important subsistence activity for his family, as it has been in Palama's family. Similarly, Kaiakapu

testified that Palama is hunting as part of the native Hawaiian lifestyle. Finally, Palama testified that he has been hunting pig in Hanapēpē Valley since he was a little kid and that he was taught by his family, who in turn were taught by their family. Palama further testified that he uses the pig meat for various types of food and that he shares it with his family.

As noted, the State did not present any evidence to counter the evidence produced by Palama.

The circuit court's COL 4 that Palama "brought forward evidence that hunting pig was an established native Hawaiian custom or tradition practiced prior to 1892" was based on FOF 5, 8, and 10, which are supported by substantial evidence and are not clearly erroneous. Therefore, COL 4 is not wrong. See State v. Rippe, 119 Hawai'i 15, 21, 193 P.3d 1215, 1221 (App. 2008) ("A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." (Citation and quotation marks omitted)).

The State also contends that the circuit court erred in granting Palama's motion to dismiss because article XII, section 7 of the Hawai'i Constitution only protects "rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and *possessed by ahupua'a tenants*," and Palama did not prove he is a tenant of an ahupua'a, let alone the Hanapēpē ahupua'a at the time of the alleged offense. The State has waived this contention for failure to raise the argument before the circuit court. Nevertheless, COL 5 -- recognizing that native Hawaiian rights may extend beyond the ahupua'a in which a native Hawaiian resides, if such rights have been customarily and traditionally exercised in the manner in question -- reflects an accurate statement of the law and is supported by the FOFs.[16]

---

[16] During oral arguments, the State argued, for the first time, that the circuit court issued a vague order that appeared to expand the scope of protected customary or traditional practices previously recognized in Hawai'i, by making the right "incident to kuleana lot ownership," and not residency in an ahupua'a. In COL 2, the circuit court concluded that:

14

We acknowledge that to date, there have been no Hawai'i appellate cases directly addressing whether pig hunting is a constitutionally protected traditional and customary practice, and for this reason, we reiterate that our decision here is confined to the narrow circumstances and the particular record in this case.[17] Based on the uncontroverted kama'āina testimony of Palama's witnesses and the expert testimony of Dr. Osorio, the circuit court did not err in concluding that Palama's pig hunting on the subject property constitutes a traditional and customary

---

> 2. Lawful native Hawaiian occupants of an ahupua'a may--for the purpose of practicing native Hawaiian customs and traditions--enter undeveloped lands within the ahupua'a to gather specifically enumerated items. Kalipi v. Hawaiian Trust Co., Ltd. 66 Haw. 1, 3-4, 656 P.2d 745 (1982). Defendant and his ohana are lawful occupants of the subject ahupua'a.

The State argued that the circuit court erred because the Hawai'i Supreme Court in Kalipi expressly rejected that customary or traditional practices could be exercised by an individual who was not a lawful occupant, i.e. resident, of the ahupua'a in which the practices were being conducted, and instead merely owned a lot in the ahupua'a. Although the circuit court incorrectly relied on Kalipi in COL 2, cases subsequent to Kalipi have recognized that "native Hawaiian rights protected by article XII, section 7 may extend beyond the ahupua'a in which a native Hawaiian resides where such rights have been customarily and traditionally exercised in this manner." Pele Defense Fund, 73 Haw. at 620, 837 P.2d at 1272; see also State v. Pratt (Pratt II), 127 Hawaii 206, 215, 277 P.3d 300, 309 (2012); PASH, 79 Hawaii at 439-40, 903 P.2d at 1260-61. This development in the law is reflected in the circuit court's COL 5, which is not wrong.

[17] The State also appears to contend, without any supporting legal authority, that because pig hunting is dangerous in nature, it cannot receive constitutional protection. The State also contends that hunting is not similar to the enumerated rights provided in HRS § 7-1 thus cannot be a protected right. We disagree. We have already rejected the State's contention that the native Hawaiian rights that receive constitutional protection are limited to those included in HRS § 7-1.

Further, a Standing Committee Report discussing article XII, section 7 of the Hawaii Constitution suggests that hunting may be entitled to protection:

> Your Committee found that besides fishing rights, other rights for sustenance, cultural and religious purposes exist. Hunting, gathering, access and water rights, while not provided for in the State Constitution, were nevertheless an integral part of the ancient Hawaiian civilization and are retained by its descendants.

Stand. Comm. Rep. No. 57, reprinted in 1 PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF HAWAII OF 1978, at 640 (emphasis added). The Committee on Hawaiian Affairs noted that hoa'āina, or tenants of an ahupua'a, "had rights to make use of house lots, cultivate personal taro patches and engage in subsistence gathering and hunting activities that consumed but did not deplete the natural resources, wild animals and birds of the ahupua'a." Id. at 640 (emphasis added).

practice.[18]  Accordingly, given the record in this case, the circuit court did not err in concluding that Palama met his burden under Hanapi.

### C. The Circuit Court Did Not Err in Concluding that Palama's Actions Were Protected

"[O]nce a criminal defendant satisfies the three-prong showing required by Hanapi, there remains a balancing test before the defendant's assertion of the native Hawaiian privilege negates any possible criminal conviction." State v. Pratt (Pratt II), 127 Hawaiʻi 206, 216, 277 P.3d 300, 310 (2012). In performing the balancing test, a court must look to the totality of the circumstances and balance the State's interest in regulating the activity against the defendant's interests in conducting the traditional or customary practice. Id. at 216-18, 277 P.3d at 310-12.[19]

In its articulation of the balancing test, the circuit court made the following FOFs and COLs:

> 18. There was nothing unreasonable about the way Defendant hunted pig.
>
> 19. The State's attempt to regulate Defendant's conduct . . . amounts to a blanket prohibition or extinguishment of Defendant's protected practice of hunting pig on the subject property. . . .
>
> CONCLUSIONS OF LAW
>
> . . . .
>
> 7. Constitutionally protected native Hawaiian rights, reasonably exercised, qualify as a privilege for purposes of enforcing criminal trespass statutes. State v. Hanapi. The reasonable exercise of ancient Hawaiian usage is entitled to protection under article XII, section 7. Id. Here, Defendant's exercise of his ancient Hawaiian usage was reasonable.

_____

[18]  The Robinson Family claims that pig hunting cannot be a customary or traditional native Hawaiian practice because hunting game without the permission of the landowner constituted a violation of Kingdom law. As discussed previously, the Kingdom laws submitted by the Robinson Family are not dispositive in this appeal because determining their applicability to the issues would require additional facts outside of the record before us.

[19]  In PASH the Hawaiʻi Supreme Court explained that prior case law informs that "[t]he balance of interest and harms clearly favors a right of exclusion for private property owners as against persons pursuing non-traditional practices or exercising otherwise valid customary rights in an unreasonable manner." 79 Hawaiʻi at 442, 903 P.2d at 1263.

8. Because Defendant satisfied his burden through evidence and testimony, the Court reconciled the competing interests and upheld Defendant's privilege because it was reasonably exercised to the extent feasible.

9. The regulatory power provided in article XII, section 7 does not justify summary extinguishment of such rights by the State merely because they are deemed inconsistent with generally understood elements of the western doctrine of "property." PASH at 442. Extinguishing traditional rights based simply upon the possible inconsistency of purported native rights with our system of land tenure must fail; the Court's obligation to preserve and enforce such traditional rights is part of the Hawaii State Constitution. . . . Here, the State's attempt to regulate[] Defendant's [sic] traditional right, through criminal prosecution, amounts to a blanket prohibition or extinguishment of Defendant's protected practice of hunting pig on the subject property.

10. The government must protect the privilege of Defendant to enter the subject property to practice continuously exercised access and gathering rights necessary for subsistence and cultural purposes because no actual harm was done by Defendant. . . .

11. For the above reasons, Mr. Palama's activities are established native Hawaiian customs or traditions that require this Court's constitutional protection.

(Emphasis added.)

As an initial matter, the circuit court utilized an "actual harm" test which was subsequently rejected by the Hawai'i Supreme Court in Pratt II, issued after the circuit court dismissed this case. Although the State appears to take issue with the circuit court's balancing analysis, it does not provide any argument regarding the circuit court's use of the "actual harm" test.[20] We conclude that even under the totality of the circumstances test articulated in Pratt II, the circuit court did not err in dismissing this case given the record.

As covered above, the circuit court did not err, based on this record, in concluding that Palama's pig hunting on the subject property was a customary or traditional practice. If Palama's conduct was unreasonable, however, the State's interest in regulation would prevail. Pratt II, 127 Hawai'i at 217, 277 P.3d at 311. The circuit court found and concluded that Palama reasonably exercised his privilege. There is substantial

---

[20] The circuit court dismissed this case on April 26, 2012. Pratt II was issued several weeks later, on May 11, 2012. The briefs on appeal in this case were filed after Pratt II was issued.

evidence in the record supporting the circuit court's determination that Palama hunted in a reasonable manner.

Palama entered the subject property on foot at 7 a.m. in the morning and did not carry any guns. According to Palama, there were no fence lines and nothing to indicate that the property is privately owned by the Robinson Family. There is no evidence that there were other people in the area that Palama hunted. The State stipulated that pigs are a nuisance to Kaua'i's landscape and agriculture. According to Dr. Osorio, in addition to being a subsistence activity, pig hunting was a traditional resource management technique used to keep the pig population down and prevent further destruction of taro and sweet potato patches. Palama was pig hunting in an area around his taro patch.

On this record, the circuit court did not err in finding that there was nothing unreasonable about the way Palama hunted pig in this case.

The circuit court also concluded in COL 8 that competing interests were "reconciled." The State, the Attorney General, and the Robinson Family all appear to stress that the State's preeminent interest is to maintain public safety. In its opening brief on appeal, the State makes only vague reference to public safety as a reason for enforcing hunting regulations. The Attorney General urges this court to consider public safety in its analysis, and the Robinson Family contends that the circuit court's ruling promotes lawlessness.[21]

The difficulty in this case is that the State failed to provide any evidence to the circuit court of potential dangers, harms or concerns that the relevant statutes seek to address.

_____

[21]    Both the Robinson Family and the Attorney General argue that this court's affirmation of the circuit court's decision would amount to an unprecedented expansion of the traditional and customary practices doctrine, endanger the public, and promote lawlessness. For example, the Attorney General argues that the safety risk becomes much greater if the native Hawaiian custom or tradition were "more broadly defined to include pig hunting *with firearms*" and warns that regulating hunting on public land would be in jeopardy if we affirm. We decline to address circumstances not in the record in this case. We reiterate that Palama used dogs and a knife, not a gun, that there is no evidence in the record that he hunted in an unsafe manner, and that our task is to determine whether the circuit court erred on the record before it.

For example, this case is unlike Pratt II, where a representative from the DLNR testified for the prosecution about the purpose of the park regulations involved in that case. In this case, based on the evidence and arguments before it, the circuit court was left to balance Palama's rights against "the western doctrine of 'property'" and "our modern system of land tenure" and not any specific regulatory purpose.[22] See COL 9. Although we agree that hunting can be a dangerous activity and the State certainly has a valid interest in protecting public safety, we cannot decide this case based on an argument that the State waived and for which the record is devoid of evidence. See Moses, 102 Hawai'i at 456, 77 P.3d at 947 (stating the general rule that if a party fails to raise an argument at trial, that argument will be deemed to be waived on appeal).

Pratt II and State v. Armitage, 132 Hawai'i 36, 319 P.3d 1044 (2014), both cases involving defendants who argued the Hanapi defense to violations of administrative regulations, are instructive for our purposes here.[23] In both cases, the State presented evidence regarding the purpose of the applicable

---

[22] "[T]he regulatory power provided in article XII, section 7 does not justify summary extinguishment of such rights by the State merely because they are deemed inconsistent with generally understood elements of the western doctrine of 'property.'" PASH, 79 Hawai'i at 442, 903 P.2d at 1263.

[23] In Pratt II, the defendant was cited for visiting a closed area of the Kalalau Valley in the Nā Pali Coast State Wilderness Park on Kaua'i. Pratt II, 127 Hawai'i at 207-08, 277 P.3d at 301-02. Pratt claimed that he was not illegally camping but was taking care of the heiau in the park as his ancestors had done. Id. at 208-09, 277 P.3d at 302-03. The State argued that its right to regulate in order to "protect the health and safety of the public" and "preserve the natural environment" should prevail, and the trial court concluded that the balancing analysis weighed in favor of the State. Id. at 210, 277 P.3d at 304. On appeal, the Hawai'i Supreme Court held that Pratt's interest in conducting his activities without a permit did not outweigh the State's interest in limiting the number of visitors to Kalalau Valley, thus, Pratt's activities did not fall under constitutional protection. Id. at 218, 277 P.3d at 312.
　　　　Most recently in Armitage, three defendants were charged with unlawfully entering the Kaho'olawe Island Reserve in violation of HAR § 13-261-10, which prohibits entrance absent specific authorization from the Kaho'olawe Island Reserve Commission. 132 Hawai'i at 40-41, 319 P.3d at 1048-49. On appeal, the Hawai'i Supreme Court, having assumed that the defendants satisfied the three-part Hanapi test, concluded that the State's interests in public safety prevailed because the regulation is "intended to limit the exposure of individuals to potential safety hazards in the Reserve[,]" and the defendants made no attempt to obtain lawful entry into the Reserve. Id. at 54-55, 319 P.3d at 1062-63.

regulations, the harms they intended to prevent, and the State's interests in enforcement, and the trial court in both cases concluded that the State's interests prevailed over those of the defendants. Pratt II, 127 Hawai'i at 209, 277 P.3d at 303; Armitage, 132 Hawai'i at 44-45, 319 P.3d at 1052-53. On appeal in these cases, the Hawai'i Supreme Court held that the State's interest in regulating the activity conducted by the defendants outweighed the defendants' interest in performing the activities, especially where an avenue existed to perform the activity within the applicable regulations, and the defendants made no effort to comply with those procedures. Pratt II, 127 Hawai'i at 218, 277 P.3d at 312; Armitage, 132 Hawai'i at 54-55, 319 P.3d at 1062-63. These cases stand in stark contrast to the present appeal, where the State has failed to present any evidence whatsoever regarding the statutory purpose or the concerns addressed by HRS § 183D-26.

Finally, we address the State's challenge to the circuit court's FOF 19 and COL 9, in which the circuit court determined that the State's regulation of Palama's conduct amounts to a blanket prohibition or extinguishment of his protected practice on the subject property.

On appeal, the State argues that FOF 19 is clearly erroneous and COL 9 is wrong because "[a]ll Palama has to do is ask the landowner, or get a hunting license and hunt in the proper place." In the alternative, the State argues that even if the private landowner denies access, there is no blanket prohibition or summary extinguishment of Palama's rights because he can easily hunt in nearby State-regulated hunting areas. The Attorney General and the Robinson Family reiterate this argument in their amicus briefs. Palama responds that under HRS § 183D-26 "private property owners would then be delegated the absolute power to grant or deny Native Hawaiians their constitutional privileges."

The circuit court carefully tailored FOF 19 and COL 9 to address only Palama's right to hunt pig on the subject property. Our analysis focuses on whether the State's enforcement of HRS § 183D-26 and § 708-815 in this case operates

as a prohibition on Palama's pig hunting on the subject property, not hunting in general on private or public property.

Our review of the relevant case law and legislative history leads us to the conclusion that the circuit court was correct in concluding, on the record in this case, that the State's efforts to regulate Palama's pig hunting on the subject property (by requiring permission from the private land owner) in effect operates as a summary extinguishment of Palama's constitutionally protected right to hunt pig on the subject property.

In PASH, the Hawai'i Supreme Court declared that

> the reasonable exercise of ancient Hawaiian usage is entitled to protection under article XII, section 7. *See Pele*, 73 Haw. at 618-21, 837 P.2d at 1269-72 (holding that rights primarily associated with residence in a particular ahupua'a under HRS § 7-1 might have extended beyond those bounds through ancient Hawaiian custom preserved in HRS § 1-1); *id.* at 620, 837 P.2d at 1272 (holding that article XII, section 7 reaffirmed "all such rights"). Traditional and customary rights are properly examined against the law of property as it has developed in this state. <u>Thus, the regulatory power provided in article XII, section 7 does not justify summary extinguishment of such rights by the State merely because they are deemed inconsistent with generally understood elements of the western doctrine of "property."</u>

79 Hawai'i at 442, 903 P.2d at 1263 (emphasis added). The court in PASH later noted that "[o]ur examination of the relevant legal developments in Hawaiian history leads us to the conclusion that the western concept of exclusivity is not universally applicable in Hawai'i." Id. at 447, 903 P.2d at 1268 (citations omitted).

Further, review of the history surrounding the enactment of article XII, section 7 supports a conclusion that a landowner's right to exclude may not in itself prevent the exercise of customary and traditional practices.

> The Committee decided to add this new section to the Constitution in order to reaffirm, for descendants of native Hawaiians, rights customarily and traditionally exercised for subsistence, cultural and religious purposes. <u>Aware and concerned about past and present actions by private landowners</u>, large corporations, ranches, large estates, hotels, and government entities <u>which preclude native Hawaiians from following subsistence practices traditionally used by their ancestors, your Committee proposed this new section to provide the State with the power to protect these rights and to prevent any interference with the exercise of these rights. Moreover, your Committee decided to provide language which gives the State the power to regulate these rights.</u> Your Committee did not intend these rights to be

> indiscriminate or abusive to others. While your Committee
> recognizes that, historically and presently, native
> Hawaiians have a deep love and respect for the land, called
> aloha aina, reasonable regulation is necessary to prevent
> possible abuse as well as interference with these rights.

Stand. Comm. Rep. No. 57, reprinted in 1 PROCEEDINGS OF THE
CONSTITUTIONAL CONVENTION OF HAWAII OF 1978, at 639 (emphases
added). Delegates expressed that the amendment was important
"since the large landowners, who basically are 10 to 12
corporations and estates and who own almost 90 percent of all
private lands, have intruded upon, interfered with and refused to
recognized such rights." Comm. Whole Rep. No. 12, id. at 1016.
This history informs our analysis of Palama's claimed right in
this case.

Here, the language of HRS § 183D-26 gives the Robinson
Family, not the state, all of the power to grant or deny access
to Palama. Without permission, Palama, who possessed a valid
hunting permit, apparently could not avail himself of any
regulatory process to seek to engage in his customary and
traditional practice of pig hunting mauka of his taro patch on
the subject property.[24] To say that Palama must obtain
permission from the landowner or else hunt on public land
frustrates the protections afforded by HRS §§ 1-1 and 7-1 and
article XII, section 7, which, in part, were adopted to protect
native Hawaiian rights to continue traditional and customary,
practices in the areas they had been practiced. Thus, we
conclude that FOF 19 is not clearly erroneous and that COL 9 is
not wrong based on the record in this case.

Our review of Palama's interests, as established by
evidence and testimony, and the State's interests, of which there
is no evidence in the record, leads us to the conclusion that, in
view of the totality of the circumstances established in this

---

[24] In contrast, in both Pratt II and Armitage, the Hawai'i Supreme
Court took into account that the defendants could practice their traditional
and customary rights within the bounds of law by applying for and obtaining
the relevant permits. See Pratt II, 127 Hawai'i at 218, 277 P.3d at 312
(considering that the defendant could obtain a camping permit or apply for a
curatorship to work with the DLNR); Armitage, 132 Hawai'i at 55, 319 P.3d at
1063 (highlighting that defendants could apply for authorization to enter the
Reserve).

case, the circuit court did not err in balancing the respective interests of Palama and the State. Absent any evidence of the State's public safety interest, the circuit court did not err in concluding that Palama's interests prevailed over the State's interest.

## V. Conclusion

Accordingly, for the reasons set forth in this opinion, we affirm the circuit court's dismissal of the criminal charges against Palama in this case.

DATED: Honolulu, Hawai'i, December 11, 2015.

Tracy Murakami,
Deputy Prosecuting Attorney,
(John H. Murphy,
Deputy Prosecuting Attorney,
on the briefs) for
Plaintiff-Appellant.

Daniel G. Hempey,
(Hempey & Meyers),
(Timothy J. Tobin,
Court-appointed Attorney
on the answering brief),
for Defendant-Appellee.

Robert T. Nakatsuji,
Deputy Solicitor General,
Department of the Attorney General,
for amicus curiae Attorney General
of the State of Hawai'i.

Eric A. James,
Tim Lui-Kwan,
Arsima A. Muller,
on the amicus curiae brief for Movants,
Robinson Family Partners and Gay & Robinson, Inc.

Presiding Judge

Associate Judge

Associate Judge